2017 PA Super 58

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RICHARD A. CHAMBERS | |
| Appellant | No. 2389 EDA 2015 |

Appeal from the Judgment of Sentence dated June 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006404-2014

BEFORE: DUBOW, J., SOLANO, J., and PLATT, J.[*]

OPINION BY SOLANO, J.: **FILED MARCH 07, 2017**

Appellant, Richard A. Chambers, appeals from the judgment of sentence imposed by the trial court after it convicted him at a bench trial of aggravated assault, conspiracy, possession of an instrument of crime (PIC), terroristic threats, simple assault, and recklessly endangering another person.[1] Appellant challenges the sufficiency of the evidence supporting his convictions, and specifically contends that the trial court erred in its characterization of mace as a deadly weapon. Upon review, we affirm.

Appellant's convictions arose from a physical altercation with Mr. Calvin Wilson that occurred on the evening of May 15, 2014, at North 15th Street in Philadelphia. Mr. Wilson was in his car, returning to his apartment

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702, 903, 907, 2706, 2701 and 2705.

with his girlfriend and her two grandchildren, when he observed a white Jeep blocking the driveway. Mr. Wilson saw Appellant standing by the driver's door of the Jeep. He explained:

> As I approached the driveway, I blew my horn and I wanted to turn into the driveway. But you couldn't turn in because the white jeep was sitting there. So I rolled my window down and I asked [Appellant] can he – why are you blocking the driveway? Can you move from the driveway?

N.T., 3/23/15, at 13. Appellant and the white Jeep did not move, so Mr. Wilson attempted to drive around them.

Mr. Wilson then exited his car and exchanged words with Appellant. He noticed two women inside the Jeep. Then Mr. Wilson saw Appellant "raise his arm" and "throw the first punch," which resulted in "fists flying" between the two men. N.T., 3/23/15, at 18, 34, 39. Next, an individual or individuals, including one or more of the women, pulled off Mr. Wilson's eyeglasses and sprayed him with mace. *Id.* at 19, 39 ("people were around macing"), 43 ("a girl with floral shoes sprayed me with mace"). As a result of being sprayed with mace, Mr. Wilson no longer could see clearly, but Appellant, who had pushed him flat onto the street and knelt on him, kept punching and kicking Mr. Wilson while someone "kept spraying" him. *Id.* at 43. Mr. Wilson described "feeling everything" and being punched and kicked until police arrived. *Id.* at 20-22, 58-59, 62-63. Appellant kept shouting that he was "going to kill" Mr. Wilson. *Id.* at 59.

- 2 -

Afterwards, Mr. Wilson was transported to the hospital, where he was treated for three hairline rib fractures, a concussion, a laceration requiring stitches, and "a burnt retina in my eye from mace." N.T., 3/23/15, at 23. He stated that his eye "drooled" as a result of being sprayed with mace. *Id.* at 24. At trial, the Commonwealth introduced into evidence three photographs of Mr. Wilson after the altercation, as well as Mr. Wilson's medical records. *Id.* at 71.

Mr. Wilson's girlfriend, Carol Mitchell, confirmed that the altercation began when "words started flying" and Mr. Wilson and Appellant "got to fighting," although "it wasn't just [Appellant]." N.T., 3/23/15, at 47. Ms. Mitchell said that "everybody jumped in" including "one male and a bunch of thick women." *Id.* at 48-49. She saw someone spray mace, but she did not know who it was because she just saw the person's hand. *Id.* at 49-50. She described Mr. Wilson afterwards as bleeding, and recalled him spending a day or two in the hospital.

Philadelphia Police Officer Henry Schoch[2] was called to the scene of the altercation. He observed "a pile of people on top" of Mr. Wilson, and "a number of females out there." N.T., 3/23/15, at 60-61. He stopped the

_____

[2] The officer's name is spelled "Schoch" in the notes of testimony from the March 23, 2015 bench trial, although the trial court in its February 19, 2016 opinion spells the officer's name "Schock."

- 3 -

altercation, and "was left with [Appellant] on top of [Mr. Wilson]." *Id.* at 61. He arranged for Mr. Wilson to be transported to the hospital. *Id.* at 67.

One of the neighborhood residents, Jeffrey Jones, witnessed the encounter from his apartment window and saw Appellant talking with his girlfriend in the white Jeep. He noticed that Appellant's attention was diverted "towards the driveway." N.T., 3/23/15, at 75-76. A "yelling conversation" ensued, and he saw Appellant "go down" and both men "fall into the street." *Id.* at 76. Mr. Jones went outside and saw "everybody in the middle of the street." *Id.* at 77. He also saw "[Appellant's] girlfriend and whoever, she was – they seen – they had spray. Trying to pepper spray this guy because he's a pretty big guy." *Id.*

Following the testimony presented at trial and the trial court's verdicts, Appellant was sentenced to 1½ to 3 years of incarceration, followed by 3 years of reporting probation.[3] Appellant filed a post-sentence motion that the trial court denied. He then filed this timely appeal.

Appellant states his three issues for review as follows:

[1.] Was not the evidence insufficient to convict appellant of aggravated assault with a deadly weapon in that 1) appellant, who was involved in a fist-fight with the complainant, was not criminally liable as an accomplice for another person's conduct of spraying the complainant with mace; and 2) mace was not proven to constitute a deadly weapon?

_____

[3] The trial court sentenced Appellant to 1½ to 3 years' incarceration for aggravated assault and 3 years' probation for PIC; the trial court imposed no further penalty for the other convictions.

[2.] Was not the evidence insufficient to convict appellant of conspiracy to commit aggravated assault with a deadly weapon where the Commonwealth failed to prove that: 1) mace was a deadly weapon; 2) appellant had a shared intent to commit an assault with a deadly weapon; or 3) appellant was a party to a prior agreement to commit such an assault?

[3.] Was not appellant erroneously convicted of possessing an instrument of crime where the bill of information specified a knife, and the trial court explicitly found the evidence insufficient to prove the crime as charged, but nevertheless convicted him of possessing an uncharged instrument of crime, a can of mace?

Appellant's Brief at 3.

Each of these issues challenges the sufficiency of the evidence supporting Appellant's aggravated assault, conspiracy, and PIC convictions.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Sullivan*, 820 A.2d 795, 805 (Pa. Super. 2003) (citation omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003). As a reviewing court, we many not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003).

In his first two issues, Appellant claims that the Commonwealth failed to prove the elements of aggravated assault and conspiracy to commit aggravated assault. The relevant assault statute states:

**§ 2702. Aggravated assault**

**(a)    Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life . . . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S. § 2702.

Criminal conspiracy is governed by Section 903 of the Crimes Code:

**(a)    Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

**(b)    Scope of conspiratorial relationship.--**If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

18 Pa.C.S. § 903.

In his third issue, Appellant challenges his conviction for PIC, which is defined as:

**(a) Criminal instruments generally**.--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

. . .

**(d)** *Definitions*.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

. . .

**"Instrument of crime."** Any of the following:

. . .

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

18 Pa.C.S. § 907.

### Accomplice and Conspirator Liability

The trial court determined that "under the circumstances of this case . . . Appellant and a group of others, by way of their relationship to each other, agreed to commit a crime, and with shared intent, committed overt acts in furtherance of the conspiracy to physically assault the Complainant through the use of mace." Trial Court Opinion, 2/19/16, at 22. Since the evidence is uncontroverted that Appellant did not spray the mace, Appellant's convictions rest upon a theory of accomplice liability. ***See Commonwealth v. Robinson***, 817 A.2d 1153, 1158 (Pa. Super. 2003). The Crimes Code provides:

**Liability for conduct of another; complicity**

**(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:

- 7 -

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.--**When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S. § 306.

The trial court correctly held that the evidence in this case, viewed in a light most favorable to the Commonwealth as the verdict-winner, demonstrates Appellant's active participation in the physical altercation, in which he was aided by the unidentified person or persons who sprayed the mace and facilitated the aggravated assault of Mr. Wilson. ***See Commonwealth v. Vining***, 744 A.2d 310, 321 (Pa. Super. 2000) (transcending mere association, accomplice liability requires active and

purposeful participation in criminal activity with others), **appeal dismissed as improvidently granted**, 774 A.2d 1246 (Pa. 2001). Appellant, when he began punching Mr. Wilson, prompted one or more of his unidentified cohorts to spray mace at Mr. Wilson, and is therefore criminally liable as an accomplice for their acts. 18 Pa.C.S. § 306.

Appellant also is liable as a co-conspirator. Accomplice liability and conspiracy are not one and the same crime. **Commonwealth v. McClendon**, 874 A.2d 1223, 1229 (Pa. Super. 2005). Conspiracy requires proof of an additional factor which accomplice liability does not: the existence of an agreement. **Commonwealth v. Murphy**, 795 A.2d 1025 (Pa. Super. 2002), **aff'd**, 844 A.2d 1228 (Pa. 2004). To sustain a conviction for criminal conspiracy, the Commonwealth must establish that 1): the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) he did so with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy. **Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa. Super. 2011), *citing* **Commonwealth v. Barnswell Jones**, 874 A.2d 108, 121 (Pa. Super. 2005) (quoting **Commonwealth v. Murphy**, 795 A.2d 1025, 1037–38 (Pa. Super. 2002), **aff'd**, 844 A.2d 1228 (Pa. 2004)). However, an "explicit or formal agreement to commit the crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." **Commonwealth v. Geiger**, 944 A.2d 85, 90 (Pa. Super. 2008) (emphasis

added), quoting **Commonwealth v. Swerdlow**, 636 A.2d 1173, 1177 (Pa.

Super. 1994).  Therefore —

> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:
>
>> An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.  These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

**Commonwealth v. Greene**, 702 A.2d 547, 554 (Pa. Super. 1997) (internal

citations and quotation marks omitted).  With respect to the overt act:

> "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." [**Commonwealth v. Hennigan**, 753 A.2d 245, 253 (Pa. Super. 2000)].  "The intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes a defendant must act with the intent of promoting or facilitating the offense." **Commonwealth v. Davenport**, 307 Pa. Super. 102, 452 A.2d 1058, 1062 (1982).

**Commonwealth v. Murphy**, 795 A.2d at 1038.

The trial court referenced the "web of evidence" in this case and stated

that Appellant did not need to commit an "overt act; a co-conspirator may

commit the overt act."  Trial Court Opinion, 2/19/16, at 19-20, *citing*

**Commonwealth v. Lambert**, 795 A.2d 1010, 1016 (Pa. Super. 2002),

**appeal denied**, 805 A.2d 521 (Pa. 2002).   The court continued:

"circumstances such as an association between alleged conspirators, knowledge of the commission of the crime, presence at the scene of the crime, and/or participation in the object of the conspiracy, are relevant to prove a conspiracy, when 'viewed in conjunction with each other and in the context in which they occurred.'" **Id.** at 20 (citing **Lambert**, **supra**). The trial court concluded:

> Here, the evidence is sufficient to support a finding that [Appellant] was a co-conspirator in assaulting the Complainant with mace. [Appellant] (1) entered into an agreement to commit or aid in an unlawful act with the woman or women who sprayed the mace when he engaged in a fight with the Complainant; (2) with a shared criminal intent to assault the Complainant following a heated argument between the Complainant and [Appellant] over moving his co-conspirators['] vehicle to unblock the driveway; and (3) the use of mace on the Complainant was done in furtherance of the conspiracy to blind him so that the Complainant could not defend himself and [Appellant] could physically assault him further.

**Id.** We agree with the trial court's analysis and conclude that the court did not err in holding Appellant liable as both an accomplice and a conspirator.

**Possession of Instrument of Crime**

As to Appellant's PIC conviction, the trial court explained:

> In the present case, the bill of information states that [Appellant] was charged with Possession of an Instrument of Crime specifying a knife as the instrument. However, this court concluded there was not enough evidence to establish that a knife was possessed and used by [Appellant] to assault the Complainant. Still, Defense made no argument at trial about the bill of information specifying the knife as the instrument for Possession of an Instrument of Crime. Moreover, there was ample evidence that [Appellant] was involved in a conspiracy to assault [Mr. Wilson] with mace as the facts established the necessary elements of the charges as stated above.

Additionally, the criminal complaint and the discovery materials presented to [Appellant] adequately placed him on notice that mace was allegedly used in the incident. From the institution of the proceedings, [Appellant] and his counsel were aware that the Complainant alleged that mace was used against him by [Appellant's] co-conspirators. The affidavits of probable cause supporting the criminal complaints are sources of the Commonwealth's factual allegations alerting [Appellant] to the alleged use of mace on the Complainant. As such, adequate notice was provided to [Appellant] and no violation of state and federal due process and the rules of criminal procedure occurred.

Moreover, if the bills of information were defective in any way, [Appellant] could have raised that claim at any stage of the proceedings. Rather, no claim was raised that the court erred in naming mace as the instrument of crime in lieu of the knife named in the bills of information until now. Accordingly, under examination of the facts, it was proper for this court to find that the [Appellant] had notice that the mace used in the assault may be considered an instrument of crime regardless of whether or not it was specified in the bill of information. Any additional claim is waived.

[Appellant] argues in the third part of his third issue on appeal that he was not proven to be an accomplice or a co-conspirator to the possession of mace. As discussed earlier in this opinion, this court found that there was sufficient evidence that [Appellant] was a co-conspirator to the assault using mace on the Complainant. Additionally, [Appellant] may be found guilty of both Possession of an Instrument of Crime and Conspiracy. See *Commonwealth v. Bullock*, 2009 WL 7325775 (Pa. Com. Pl. 2009), *aff'd*, 998 A.2d 1025 (Pa. Super. Ct. 2010)

Trial Court Opinion, 2/19/16, at 23-24. We agree with the trial court's analysis, which disposes of the bulk of Appellant's third issue.

Although it is uncontroverted that Appellant did not spray the mace at Mr. Wilson, Appellant is criminally liable for the actions of his cohorts because he was a full participant in a conspiracy, and conspirators are responsible for one another's actions. ***Commonwealth v. Saunders***, 946

A.2d 776, 781 (Pa. Super. 2008) (the actions of one co-conspirator may be imputed to another conspirator, and a conspirator is criminally responsible for those actions of his co-conspirator that are accomplished in furtherance of the common design). Responding to Appellant's argument that he "was not proven to be an accomplice or co-conspirator to the possession of mace," the trial court expressly disagreed, stating that it "found that there was sufficient evidence that [Appellant] was a co-conspirator to the assault using mace on the Complainant [and] may be found guilty of both Possession of an Instrument of Crime and Conspiracy." Trial Court Opinion, 2/19/16, at 24. We see no error in the trial court's holding.

### Mace as a "Deadly Weapon" and "Instrument of Crime"

We now turn to gravamen of Appellant's three issues: that the trial court erred in finding mace to be a deadly weapon and an instrument of a crime. We hold that under the facts presented, mace was a deadly weapon and an instrument of a crime. Appellant assails the trial court's treatment and characterization of the mace sprayed at Mr. Wilson, asserts that the Commonwealth failed to prove the mace was a deadly weapon, and argues that the trial court merely "erroneously deemed" the can of mace [to be] a deadly weapon." Appellant's Brief at 8. We disagree.

- 13 -

Mace is a type of pepper spray that is commonly used as a self-defense agent.[4] Appellant characterizes it as "[a]n instrument which is not inherently a deadly weapon and which . . . [is] intended to temporarily incapacitate the victim of [an] assault," and observes that no evidence was presented at trial regarding the nature of mace or its chemical composition. Appellant's Brief at 15-16. The trial court did not say that mace is inherently a deadly weapon, but that mace qualified as a deadly weapon in this case because of the way it was used:

> [M]ace is an instrument which is likely to cause serious bodily injury if used in a manner such as that used against the Complainant, Mr. Wilson. If one sprays mace directly into the eyes of another person there is a high probability that the victim will be seriously hurt especially while being simultaneously stomped on the ground on a driveway, a place where motor vehicles frequent, by multiple individuals. It may blur vision to cause temporary blindness, burn the eyes, cause redness and swelling. Thus, the mace used to blind the victim became a deadly weapon at the moment [Appellant's] accomplices used it on the Complainant, Mr. Wilson, during the altercation between him and [Appellant]. Here, mace temporarily blinded Mr. Wilson. As a result, Mr. Wilson was unable to defend himself against his attackers.

Tr. Ct. Op. at 18. The court therefore characterized mace as a deadly weapon under the final clause of the definition of "deadly weapon" in Section

---

[4] "Mace" is claimed as a trademark of Mace Security International, which describes it as "the original trusted brand for personal defense sprays." *See About Mace®*, *http://www.mace.com/about/?SID=ard2l7p07ntknr12mk512g 2n33* (2015). The name has acquired a dictionary meaning that refers generally to any such disabling spray product. *See* "Mace," Merriam-Webster.com, *https://www.merriam-webster.com/dictionary/mace* (Merriam-Webster 2017).

J-S93020-16

2301 of the Crimes Code:

> **"Deadly weapon."** Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, **or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury**.

18 Pa.C.S. § 2301 (emphasis added). We agree with the trial court's characterization.

No reported Pennsylvania appellate decision addresses this issue, but in **Commonwealth v. Spruill**, 80 A.3d 453, 454-455 (Pa. 2013), the Supreme Court of Pennsylvania, while not directly presented with this question, recognized the rationale by which mace may be characterized as a deadly weapon. The defendant in **Spruill**, with ten other women, threatened to kill her three victims and repeatedly punched, kicked, and maced them until bystanders interceded to stop the attack. The trial court convicted the defendant of multiple charges that included aggravated assault, conspiracy to commit aggravated assault, and PIC. In upholding the convictions, the Supreme Court observed:

> In its Rule 1925 opinion, the trial court addressed the sufficiency of the evidence by noting that the evidence showed that appellee and her ten cohorts repeatedly punched and kicked Derrell after appellee had used mace to render Derrell defenseless. The trial court concluded that appellee had "used the mace in such a manner that it became a device which was likely to produce serious bodily injury," and that appellee's use of the mace satisfied the "deadly weapon element" of F2 aggravated assault.

- 15 -

80 A.3d at 456 (citation and footnote omitted). The Supreme Court in **Spruill** was not asked to rule on the correctness of the trial court's analysis of the deadly-weapon issue, but its summary dovetails with the analysis that applies here.

The plain language of the Legislature's definition of "deadly weapon" makes clear that the weapon need not be a "firearm . . .  or any device designed as a weapon," but may also be "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."  18 Pa.C.S. § 2301. "Although deadly weapons are commonly items which one would traditionally think of as dangerous (*e.g.,* guns, knives, *etc.*), there are instances when items which normally are not considered to be weapons can take on a deadly status."  **Commonwealth v. Scullin***, 607 A.2d 750, 753 (Pa. Super. 1992), **appeal denied***, 621 A.2d 579 (Pa. 1992).  These items "take on such status based upon their use under the circumstances." **Commonwealth v. Rhoades***, 8 A.3d 912, 917 (Pa. Super. 2010); **appeal denied***, 25 A.3d 328 (Pa. 2011), **cert. denied***, 565 U.S. 1263, 132 S.Ct. 1746, 182 L.Ed.2d 536 (2012).  **See Commonwealth v. McCullum***, 602 A.2d 313, 323 (Pa. 1992) (holding "[a] deadly weapon need not be ... an inherently lethal instrument or device").  Thus, "[a]n ax, a baseball bat, an iron bar, a heavy cuspidor, and even a bedroom slipper have been held to constitute deadly weapons under varying circumstances."  **Commonwealth v. Prenni***, 55 A.2d 532, 533 (Pa. 1947); **see Commonwealth v. Nichols***,

692 A.2d 181, 184 (Pa. Super. 1997) ("[a] baseball bat, when swung at the head, can be a very deadly weapon"). Even an egg can be a deadly weapon when thrown from the roof of building at the windshield of a vehicle. *See Commonwealth v. Roman*, 714 A.2d 440 (Pa. Super. 1998), *appeal denied*, 729 A.2d 1128 (Pa. 1998). *See also Commonwealth v. Raybuck*, 915 A.2d 125 (Pa. Super. 2006) (holding that mouse poison became deadly weapon when included in sandwich for husband to consume; fact that amount was insufficient to cause serious bodily injury was irrelevant to classification as deadly weapon).

Therefore, even if mace is not an inherently deadly instrumentality, its use in this case played a critical role in the assault of Mr. Wilson, and it became a deadly weapon because it was used to render Mr. Wilson defenseless against Appellant's sustained attack. *See Scullin*, 607 A.2d at 753 (the definition of deadly weapon does not demand that the person in control of the object intend to injure or kill the victim; instead, it gives objects deadly weapon status on the basis of their use under the circumstances). Appellant's actions in this case — his stated intent, repeated punching, infliction of physical injuries, and, until Officer Schoch physically intervened, unrelenting attack of Mr. Wilson — support the trial court's determination that the mace sprayed by Appellant's unidentified cohort or cohorts was a deadly weapon as that classification pertains to Appellant's convictions of aggravated assault and conspiracy.

Mr. Wilson testified that during the fight, his "eyes started burning" and, because of his military background, he "knew it was mace." N.T., 3/23/15, at 19. He said that he "didn't see nothing after that." *Id.* Mr. Wilson's girlfriend, Carol Mitchell, testified that she tried to stop the fight, but was unsuccessful because "everybody jumped in." *Id.* at 48. She stated that she saw "the spray but I didn't know who did it" and that "they were constantly spraying his face . . . [and when Mr. Wilson] stood up, he was bleeding." *Id.* at 50. Officer Schoch testified that when he arrived at the scene, he saw Appellant "kneeling on [Mr. Wilson's] chest and punching him in the face." *Id.* at 58. Officer Schoch stated:

> [Appellant] was enraged, Your Honor. He might have said he was going to kill that mother-fucker five or six times just in my presence. I had the opportunity to secure [him]. . . . And when I came back to the [Appellant], he reiterated that if that guy is going to come at me, I'm going to kill that mother-fucker.

*Id.* at 59. This evidence demonstrates that mace was used to incapacitate Mr. Wilson while Appellant repeatedly punched him and threatened his life, an attack that stopped only when Officer Schoch intervened. Because the mace was used to render Mr. Wilson defenseless, it was integral to Appellant's criminal actions. Accordingly, we hold that, under these circumstances, the mace was a deadly weapon under 18 Pa.C.S. § 2301, for the use of which the trial correctly court found Appellant criminally liable.[5]

_____

[5] Our holding that mace is a deadly weapon when used in circumstances like those here is consistent with numerous decisions across the United States. *(Footnote Continued Next Page)*

For similar reasons, we also hold that mace was an "instrument of crime" for purposes of the PIC conviction. The mace was "used for criminal purposes" and it was possessed and used "under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d). *See, e.g., Commonwealth v. Brown*, 23 A.3d 544 (Pa. Super. 2011) (toy gun was an instrument of crime where defendant employed it criminally by pointing it at the robbery victim and demanding money); *Commonwealth v. Lester*, 722 A.2d 997 (Pa. Super. 1998) (clothes iron was an instrument of crime where defendant broke off its plastic handle and used its plate on the victim's head); *Commonwealth v. Vida*, 715 A.2d 1180 (Pa. Super. 1998) (paint stick was an instrument of crime where it was used to write graffiti inconsistent with its intended lawful use), *appeal denied*, 736 A.2d 604 (Pa. 1999).

Because the trial court's verdicts are supported by the record, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*(Footnote Continued)* ───────────

Some of the cases are collected in *People v. Blake*, 11 Cal.Rptr.3d 678, 688-90 (Cal. App. 2004). Although we are not bound by decisions from other jurisdictions, we may consider them for their persuasive value. *Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa. Super. 2003) (recognizing that while we are not bound by the decisions of other jurisdictions, we may "use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law").

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/7/2017</u>