J-S34023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JEROME S. LAGRECA | |
| Appellant | No. 3164 EDA 2014 |

Appeal from the Judgment of Sentence Dated October 16, 2014
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002243-2014

BEFORE: BOWES, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED AUGUST 17, 2017**

Appellant, Jerome S. LaGreca, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas following his conviction for harassment (summary offense).[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  *See* Trial Ct. Op., 1/8/15, at 1-4. Briefly, on April 19, 2014, Appellant contacted HCR ManorCare ("ManorCare") in Bethlehem, a nursing home and rehabilitation facility where his elderly parents were receiving care.  Appellant spoke on the phone with his mother, who then handed the phone to Jenayra Quinones, a nurse's aide employed by ManorCare.  Appellant's mother told Ms. Quinones that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2709(a)(1).

Appellant was upset and wanted to speak with someone about the care his parents were receiving from ManorCare.

When Ms. Quinones answered the phone, Appellant identified himself and then began a thirty to forty-five-minute harangue to express his dissatisfaction with his parents' care. Appellant used expletives during the phone call and stated that if the staff at ManorCare did not do their jobs properly, "he would come in there and raise hell and show [them] how to do [their] job physically . . . he would physically push [them] in the room and show [them] how to do [their] care." Three times, Appellant mentioned a shooting that had occurred in Allentown. He also mentioned "shooting up" ManorCare and spoke about using a gun to harm someone at ManorCare.

Ms. Quinones reported the phone call to her supervisor and later to Officer Keith Fryslin of the Bethlehem Police Department. Ms. Quinones provided a written statement to Officer Fryslin about Appellant's remarks during the phone call. Later that afternoon, Officer Fryslin contacted Appellant, who acknowledged making the phone call but initially said that he spoke only to his mother and Ms. Quinones may have overheard him. When Officer Fryslin told Appellant that his mother had confirmed handing the phone to Ms. Quinones, Appellant admitted that he spoke with Ms. Quinones, but he denied making threats. Appellant was charged with harassment and disorderly conduct.

On October 16, 2014, Appellant proceeded to a bench trial. Ms. Quinones and Officer Fryslin testified for the prosecution, giving an account of the incident consistent with the above summary. During Ms. Quinones' testimony, the court allowed the Commonwealth to use her police statement to refresh her recollection.

Appellant testified in his own defense, acknowledging that he spoke with Ms. Quinones, but denying that he had threatened to "shoot up" or bring a gun to ManorCare. He estimated that the entire conversation lasted three or four minutes. At the conclusion of the trial, the court found Appellant guilty of harassment and not guilty of disorderly conduct. That same day, Appellant was sentenced to pay a fine of one hundred dollars and the costs of prosecution. Appellant did not file any post-trial or post-sentence motions.

Counsel for Appellant timely filed a notice of appeal on November 14, 2014, and a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) on December 24, 2014. In his Rule 1925(b) statement, Appellant alleged that the evidence was "insufficient to support the verdict and/or the verdict was against the weight of the evidence." Appellant also alleged that the trial court erred in permitting Ms. Quinones to refresh her recollection of her phone call with Appellant by reviewing the written statement she provided to the police.

On February 11, 2015, Appellant's counsel filed a petition to withdraw, stating that Appellant no longer qualified for representation by the Lehigh County Public Defender's Office because he was convicted of only a summary offense and was sentenced only to pay a fine. On March 4, 2015, this Court granted counsel's petition to withdraw and ordered Appellant to notify the Prothonotary whether he intended to represent himself or seek new counsel. In response, Appellant asked this Court to remand the case to the trial court to appoint counsel. We issued an order on December 10, 2015, directing the trial court to determine Appellant's eligibility for court-appointed counsel. After holding a hearing on January 11, 2016, the trial court determined that Appellant was not eligible for court-appointed counsel pursuant to **Commonwealth v. Blackham**, 909 A.2d 315, 317 (Pa. Super. 2006) (holding that "an indigent defendant, charged with a summary offense punishable by imprisonment, is not entitled to counsel where the court pre-determines that a sentence of imprisonment is unlikely, and no term of imprisonment is imposed after conviction"), **appeal denied**, 919 A.2d 954 (Pa. 2007), and **Commonwealth v. Smith**, 868 A.2d 1253, 1256 (Pa. Super.) (holding that a defendant has no constitutional or statutory right to appointment of counsel in a summary case where imprisonment was not a possible penalty), **appeal denied**, 877 A.2d 462 (Pa. 2005).

On January 25, 2016, Appellant informed this Court that he wished to proceed with his appeal pro se. We issued a briefing schedule that required

Appellant to file his brief by October 4, 2016. On November 11, 2016, we dismissed Appellant's appeal because he had failed to file a brief. On November 29, 2016, Appellant filed a motion to reinstate his appeal, which this Court granted. Appellant filed a brief on January 3, 2017.

In his *pro se* brief, Appellant appears to be raising the same issues that were raised in his Rule 1925(b) statement: (1) the evidence was insufficient to support the harassment verdict; (2) the verdict was against the weight of the evidence; and (3) the trial court erred in allowing Ms. Quinones to review her written statement so that she could refresh her memory of her phone conversation with Appellant.[2]

---

[2] Appellant's brief is unclear, but, charitably read, the substance of his "Statement of the question involved Pa.R.A.P. 2116" appears to encompass his Rule 1925(b) issues and we therefore have construed it that way. *See* Appellant's Brief at 2. The Commonwealth argues that all of Appellant's claims should be deemed waived because Appellant's brief "is devoid of adequate legal arguments in support of his assertions." Commonwealth's Brief at 4. Although Appellant's brief is not a model of clarity, we decline to find waiver of all of his issues. *See Commonwealth v. Lyons*, 833 A.2d 245, 252 (Pa. Super. 2003) (addressing "arguments that can reasonably be discerned" from defective brief "in the interest of justice"), *appeal denied*, 879 A.2d 782 (Pa. 2005). To the extent that Appellant raises issues in his brief that he did not include in his Pa.R.A.P. 1925(b) statement, those issues are waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this [Rule 1925] (b)(4) are waived"); *Commonwealth v. Smith*, 917 A.2d 848, 855 (Pa. Super. 2007) (allegation not contained in appellant's court-ordered Rule 1925(b) statement of matters complained of on appeal is waived for purposes of appeal) (citing *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998)).

**Sufficiency of the Evidence**

Appellant first claims that the evidence was insufficient to support the harassment verdict. We apply the following standard of review:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> As a reviewing court, we may not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence.

*Commonwealth v. Chambers*, 157 A.3d 508, 512 (Pa. Super. 2017) (citations omitted).

> Harassment is defined in pertinent part as follows:
>
> (a) **Offense defined** – A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person:
>
> > (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

18 Pa.C.S. § 2709(a)(1).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Robert L. Steinberg, we conclude that there was sufficient evidence presented to establish beyond a reasonable doubt that Appellant committed harassment. *See* Trial Ct. Op. at 5-8 (finding Appellant's threats to "shoot up" the facility

- 6 -

and to physically push staff were sufficient to prove harassment). To the extent that Appellant argues that the evidence was insufficient because Ms. Quinones' account of the phone call was untrue, we note that the trial court, as finder of fact, "is free to believe all, part, or none of the evidence." *Chambers*, 157 A.3d at 512. The trial court found Ms. Quinones credible, and we will not disturb that finding on appeal.

## Weight of the Evidence

Appellant also argues that the harassment verdict was contrary to the weight of the evidence. Rule 607(A) of the Rules of Criminal Procedure provides:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> (1) orally, on the record, at any time before sentencing;
>
> (2) by written motion at any time before sentencing; or
>
> (3) in a post-sentence motion.

Failure to comply with Rule 607 will result in waiver, even if an appellant includes a weight of the evidence claim in his Pa.R.A.P. 1925(b) statement and the trial court addresses the issue in its Pa.R.A.P. 1925(a) opinion. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010).

Appellant raised his challenge to the weight of the evidence for the first time in his Rule 1925(b) statement. Therefore, that claim is waived. *See Sherwood*, 982 A.2d at 494. Even if Appellant's weight claim had been

preserved, this Court would affirm the trial court's finding that the claim lacked merit. **See** Trial Ct. Op. at 5-8 (rejecting weight of the evidence claim for the same reasons as sufficiency claim).

## Refreshing Recollection

Appellant's third claim is that the trial court erred in allowing the prosecutor to refresh Ms. Quinones' recollection by using her statement to the police. "Questions regarding the admissibility of evidence are . . . matters committed to a trial court's discretion, and we generally are loathe to disturb them." **Bochetto v. Dimeling, Schreiber & Park**, 151 A.3d 1072, 1085 (Pa. Super. 2016).

Pennsylvania Rule of Evidence 612(a) states in part that "[a] witness may use a writing . . . to refresh memory for the purpose of testifying." This Court uses a three-part test to determine whether the recollection of a witness may be refreshed:

> To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness' present memory is inadequate; (2) that the writing could refresh the witness' present memory; and (3) that reference to the writing actually does refresh the witness' present memory.

**Dean Witter Reynolds, Inc. v. Genteel**, 499 A.2d 637, 641 (Pa. Super. 1985), **appeal denied**, 522 A.2d 1105 (Pa. 1987).[3] The trial court held that

---

[3] We may cite cases predating the enactment of the Pennsylvania Rules of Evidence to the extent they are in accord with the Rules. **Commonwealth v. Aikens**, 990 A.2d 1181, 1185 n.2 (Pa. Super.), **appeal denied**, 4 A.3d 157 (Pa. 2010).

the Commonwealth satisfied each of these elements. Upon review of the record, we agree with the trial court's reasoning and discern no abuse of discretion in the trial court's decision to allow Ms. Quinones to refresh her recollection. **See** Trial Ct. Op. at 8-9 (finding Commonwealth satisfied the three-part test for refreshing a witness's memory).

As we affirm primarily on the basis of the trial court's opinion, the parties are instructed to attach a copy of the trial court's opinion of January 8, 2015, to any future filing that references this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2017

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :
                                :
vs.                             : NO. CR-2243-2014
                                : Superior Court No.: 3164 EDA 2014
JEROME LAGRECA :

\* \* \* \* \*

Appearances:

        Heather Gallagher, Chief of Appeals
        For the Commonwealth

        Michael Brunnabend, Esquire
        For the Appellant

\* \* \* \* \*

## OPINION

**Robert L. Steinberg, Judge:**

On October 16, 2014, after a trial without jury, the appellant, Jerome Lagreca, was found guilty of Harassment.[1] He was sentenced the same date to pay the costs of prosecution and pay a fine in the sum of one hundred ($100) dollars. The testimony at the non-jury trial revealed that the appellant contacted ManorCare, a nursing home/rehabilitation facility where his parents were receiving care, and threatened a nurse's aide who spoke with him.

A Notice of Appeal was filed on November 14, 2014. Pursuant to this Court's Pa.R.A.P. 1925(b) directive, counsel filed a timely "Concise Statement Of Matters Complained On Appeal" (hereinafter Concise Statement) on December 24, 2014. It is alleged that the evidence was "insufficient to support the verdict and/or the verdict was against the weight of the

---

[1] 18 Pa.C.S. § 2709(a)(1).

evidence" to support the harassment verdict.[2] It is also alleged that it was error to permit Jenayra Quinones, the nurse's aide, to refresh her recollection with the written statement she provided to Officer Keith Fryslin of the Bethlehem Police Department.[3]

## Background

On April 19, 2014, Jenayra Quinones was working as a nurse's aide at HCR ManorCare on Westgate Drive in Bethlehem. She was working the 7:00 a.m. to 3:00 p.m. shift, and shortly after lunchtime she was collecting trays. While doing so, she went to check on Mary Lagreca, the appellant's mother, because the "light" to her room was illuminated,[4] which indicated a request for assistance. When Ms. Quinones entered the room, which was occupied by both of appellant's parents, Mrs. Lagreca asked her to speak with the appellant who was on the phone.

Mrs. Lagreca told Ms. Quinones that her son was upset, and wanted to speak to someone about his parents' care. When Ms. Quinones answered the phone, the appellant identified himself, and went into a thirty (30) to forty-five (45) minutes tirade about his parents' care and highlighted his displeasure with their care by using expletives.[5] He also angrily explained that if the staff did not do their job correctly that "he would come in there and raise hell and show us how to do our job physically . . . he would physically push us in the room and show us how to do our care."[6] In a further effort to emphasize whatever point he was trying to make about his intentions, the appellant, at least three times, mentioned a shooting in

---

[2] Concise Statement, ¶ 2.
[3] Id. at ¶ 1.
[4] Notes of Testimony, Trial (hereinafter N.T.T.), p. 22.
[5] Id. at pp. 26-27, 48.
[6] Id. at pp. 30, 37.

2

Allentown.[7] Ms. Quinones explained that the defendant was speaking about "violent stuff", and also stated that he would come to the facility and "raise hell".[8] The appellant's rant took a more serious turn when he mentioned "shooting up [or] in the place".[9] He also spoke about harming someone in the facility with a "gun".[10] The appellant's latter comments upset Ms. Quinones, and she reported it to her supervisor and later to Officer Fryslin.

Officer Fryslin responded to the ManorCare that afternoon and spoke with the floor supervisor, Ms. Shea. He then spoke with Ms. Quinones, and asked her to provide a written statement about the appellant's alarming statements. Later that afternoon, the appellant responded to the Bethlehem Police Department at Officer Fryslin's request. The appellant acknowledged making the phone call, but initially said he was speaking to his mother, and Ms. Quinones may have overheard his conversation. When Officer Fryslin told him that his mother confirmed that she handed the phone to Ms. Quinones, he admitted that he spoke to Ms. Quinones about his parents' treatment.[11] He denied making threats, and provided a somewhat lame explanation about the shooting in Allentown. Specifically, that people get shot over money, but that "he's not that type of person".[12]

The appellant, who was 53 at the time of trial, resided with his parents until their admission to ManorCare. Both parents, who were in their eighties, were admitted to that facility in April, 2014 for rehabilitation services. The appellant was not satisfied with the quality of their care.[13]

---

[7] N.T.T. at pp. 31-32, 45, 49-51.
[8] Id. at pp. 32-33, 37, 45.
[9] Id. at pp. 33-34, 52-53, 55, 75.
[10] Id. at p. 45.
[11] Id. at p. 72.
[12] Id. at pp. 73-74.
[13] Id. at pp. 79-82.

3

The appellant testified that on April 19, 2014, he attempted to call his parents, but initially was unsuccessful. He then attempted to reach the front office on three occasions to check on his parents' welfare. He testified that he eventually spoke to his mother and Ms. Quinones, but provided a completely different version of their conversation.[14] He denied ever threatening to shoot-up or bring a gun to ManorCare.[15] He also estimated the entire conversation as lasting no more than "three, four minutes".[16]

## Discussion

### A. Sufficiency and Weight of the Evidence

Challenges to the sufficiency and the weight of the evidence are distinct legal concepts. Commonwealth v. Davis, 799 A.2d 860, 864 (Pa.Super. 2002). A claim challenging the sufficiency of the evidence requires all the evidence admitted at trial to be viewed in the light most favorable to the verdict winner, who is also entitled to all reasonable inferences in its favor. Commonwealth v. Burkett, 830 A.2d 1034, 1037 (Pa.Super. 2003). In doing so, there must be "sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." Commonwealth v. Palo, 24 A.3d 1050, 1054 (Pa.Super. 2011) quoting Commonwealth v. Bruce, 916 A.2d 657, 661 (Pa.Super. 2007). However, the application of this test does not permit the evidence to be weighed nor is the judgment of the fact-finder substituted. "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover,

---

[14] N.T.T. at pp. 85-87.
[15] Id. at pp. 87-88.
[16] Id. at p. 88.

4

in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." Id. at 1054-1055.

The appellant's alternative argument that the verdict is against the weight of the evidence, is addressed to the discretion of the trial court. Commonwealth v. Chine, 40 A.3d 1239, 1241 (Pa.Super. 2012); Commonwealth v. Bozic, 997 A.2d 1211, 1233 (Pa.Super. 2010). A claim of this type "concedes that there is sufficient evidence, but nevertheless contends that the trial judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." Commonwealth v. Robinson, 834 A.2d 1160, 1167 (Pa.Super. 2003). See also Chine, 1243-1244 quoting Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa.Super. 2003)("the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"); Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa.Super. 2003).

> Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that 'notwithstanding all of the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'

Commonwealth v. Widmer, 744 A.2d 745, 752 (Pa. 2000).

The appellant contends that the Commonwealth failed to demonstrate that the "defendant acted with the intent to harass, annoy, or alarm [Ms. Quinones], but rather acted under the influence of transitory anger".[17] In other words, even though the appellant spent thirty (30) to forty-five (45) minutes hurling invectives, it was not intended to harass Ms. Quinones.

---

[17] Concise Statement, ¶ 2.

Instead, it merely represented passing anger generated by the treatment of his parents at ManorCare.

Harassment is defined in pertinent part as follows:

> (a) Offense defined – A person commits the crime of harassment when, with the intent to harass, annoy or alarm another, the person
> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or <u>threatens</u> to do the same.

18 Pa.C.S. § 2709(a)(1) (emphasis added).

The appellant, by his threats to "shoot-up" the facility, not only upset Ms. Quinones, but her supervisors were alarmed enough to seek police intervention.[18] He also threatened to "physically push [staff]" into his parents room to show them how to provide care to his parents. All of the facts demonstrate that staff at ManorCare were alarmed, and the appellant was threatening to either mortally wound them or subject them to physical contact. 18 Pa.C.S. § 2709(a)(1).

The defense contends that there was no <u>intent</u> to "harass, annoy, or alarm" Ms. Quinones or other staff at ManorCare. In order to be guilty of harassment, the statute "requires the fact finder to infer a specific intent, and it specifies that the conduct must be of a non-legitimate nature - conduct which is not constitutionally protected". <u>Commonwealth v. Miller</u>, 689 A.2d 238, 242 (Pa.Super. 1997). Counsel attempts to analogize the crime of Harassment to those Terroristic Threats cases which interpreted that statute as not created to penalize "spur-of-the-moment threats" which result from transitory anger. <u>Commonwealth v. Reynolds</u>, 835 A.2d 720, 730 (Pa.Super. 2003); <u>Commonwealth v. Anneski</u>, 525 A.2d 373, 376 (Pa.Super. 1987). Those cases also recognize that "[b]eing angry does not render a person incapable of forming the

---

[18] N.T.T. at pp. 35-37.

6

intent to terrorize". Reynolds, 835 A.2d at 730 quoting In re J.H., 797 A.2d 260, 263 (Pa.Super. 2002). In In re B.R., 732 A.2d 633, 638 (Pa.Super. 1999) "spur of the moment" statements were those that were "the product of a heated exchange between parties made out of hysteria or anger that do not trigger foreseeable immediate or future danger . . . ." Id.

Here, the appellant's statements foretold of future actions on his part that would place staff at ManorCare in danger. The staff were aware of appellant's familiarity with their facility, and Ms. Quinones was aware that the intensity and prolonged statements did not seem to be merely idle chatter. In this day and age, the appellant was fully aware how his statements would trigger action, and all the facts and circumstances demonstrate that it was his intention to do so.

In Commonwealth v. Hart, 559 A.2d 584 (Pa.Super. 1989) the evidence was sufficient to prove an "intent to harass" where the appellee left messages on the union's answering machine which included "threats of death and destruction" to various members of the union. In so finding, the Court stated the following:

> The mere fact that appellee may have been upset at the union's failure to assist him in obtaining employment does not negate his obvious intent to harass his listener. By the very nature of the language used, appellee no doubt knew, or should have known, that his messages would inflict terror on the listener as well as other members of the union. Any privilege enjoyed by appellee due to his recent difficulty in obtaining employment was lost the moment he began his tirade against union officials. To hold otherwise would render [the harassment statute] meaningless.

Id. at 587.

Furthermore, the appellant's initial statements to Officer Fryslin that Ms. Quinones must have overheard his conversation with his mother were false and misleading, and could be considered as an attempt to divert suspicion. "[F]alse or contradictory statements by the

accused are admissible . . . [to] infer [] that they were made with an intent to divert suspicion . . . ." Commonwealth v. Glass, 405 A.2d 1236, 1242 (Pa. 1979) quoting Commonwealth v. Bolish, 113 A.2d 464, 476 (Pa. 1955)(overruled on other grounds); see also Commonwealth v. Young, 748 A.2d 166, 180 (Pa. 1999) quoting Commonwealth v. Carbone, 574 A.2d 584, 589 (Pa. 1990)(the fabrication of false and contradictory statements by an accused may be used by the fact finder to infer that they were made with the intent to mislead authorities and are evidence of guilt); Commonwealth v. Lettrich, 31 A.2d 155, 156 (Pa. 1943); Commonwealth v. Donnelly, 653 A.2d 35, 37 (Pa.Super. 1995); Commonwealth v. Calloway, 459 A.2d 795, 798 (Pa.Super. 1983).

For all the foregoing reasons, the evidence was sufficient to sustain the verdict of guilt to Harassment, and that verdict was not against the weight of the evidence.


## B. Refreshing Ms. Quinones' Memory With Her Written Statement To Police

Throughout her testimony, Ms. Quinones remembered most of the details of the appellant's tirade. For example, she remembered that appellant threatened to "shoot-up the place", and that he would physically push staff into his parents' room. However, she could not recollect one relevant detail regarding appellant's use of the word "gun".[19]

Ms. Quinones testified almost six (6) months after the events, and readily acknowledged that looking at her written statement would refresh her recollection of the appellant's statements.[20] She explained that the date of the offense, as well as other responsibilities at ManorCare, might have affected her ability to remember all of the details. She also testified that she was nervous and did not "feel comfortable" around the appellant.[21] This

---

[19] N.T.T. at pp. 45-56, 51, 55.
[20] Id. at pp. 36, 39, 44.
[21] N.T.T. at p. 38.

8

Court overruled defense counsel's objection, and permitted Ms. Quinones to review page three of her written statement.[22]

Pa.R.E. 612 states, in pertinent part, the following:

> (a) Right to Refresh Memory. A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying.

This rule preserves the common-law rules that a witness's memory may be refreshed during testimony. Commonwealth v. Lamb, 455 A.2d 678, 685 (Pa.Super. 1983). "The proper procedure for a party to refresh his [or her] own witness' recollection is to show the writing . . . to his witness and after the witness' recollection is refreshed, to proceed with direct examination and have the witness testify from present recollection." Id. (emphasis omitted).

A three part is used to determine if the recollection of a witness may be refreshed:

> To permit the use of a writing in order to refresh the memory of a witness, the proponent must show: (1) that the witness' present memory is inadequate; (2) that the writing could refresh the witness' present memory; and (3) that reference to the writing actually does refresh the witness' present memory.

Id. quoting Commonwealth v. Proctor, 385 A.2d 383, 385 (Pa.Super. 1978); see also Commonwealth v. Montgomery, 687 A.2d 1131, 1137 (Pa.Super. 1996)(collecting cases).

The proper foundation was laid to permit the Commonwealth to refresh Ms. Quinones' memory. Her memory regarding the gun was "inadequate", her own statement could refresh her present memory, and her written statement did refresh her present memory. See Commonwealth v. Wilson, 442 A.2d 760, 764 (Pa.Super. 1982)(Proper to use reports to recollect exact words which officers did not recall.).

---

[22] Defense counsel had a copy of Ms. Quinones' written statement, and during cross-examination, used a transcript of a recording of the preliminary hearing in an effort to impeach Ms. Quinones about the use of the word "gun".

9

It was not an abuse of discretion to permit the use of a portion of Ms. Quinones' written statement to refresh her recollection. Nonetheless, any error would be treated as harmless. Montgomery, 687 A.2d at 1137-1138.

For all the foregoing reasons, the judgment of sentence should be affirmed.