371 A.2d 1008

**COMMONWEALTH of Pennsylvania**

v.

**Terry KRAMER, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided March 31, 1977.

2

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Bert M. Goodman and Eric J. Cox, Assistant District Attorneys, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On April 24, 1975, a jury found Terry Kramer guilty of simple assault, menace; simple assault, bodily injury; aggravated assault, serious bodily injury and recklessly endangering another person. Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, Sections 2701, 2702 and 2705, 18 Pa.C.S. §§ 2701, 2702, 2705. Defendant filed a motion for new trial and in arrest of judgment which was denied on September 15, 1975. He was subsequently sentenced to a term of imprisonment for a period of not less than three years nor more than six years on the charge of aggravated assault, serious bodily injury. Sentence on the charges of simple assault, menace, simple assault, bodily injury, and recklessly

4

endangering another person was suspended by reason of the previous sentence. From these verdicts and sentence, defendant has appealed to this Court alleging as error the trial court's ruling (a) that certain letters written by defendant to his wife while he was incarcerated awaiting trial and (b) that testimony regarding his conduct towards his children over a period of several years prior to the date in question be admitted into evidence during the trial. He is also alleging that the lower court abused its discretion in admitting the evidence and that the evidence did not support the verdict.

On June 1, 1974, Terry Kramer found a bicycle hidden in the woods behind his house and immediately suspected his two children, James who at the time was twelve years old and Shirley who was ten years old, of stealing it. When questioned about the bicycle the children stated that they had found it, but the defendant refused to believe them. He led the two of them to a shed that was approximately one hundred yards from their house and beat the two children with a stick. They testified that they were struck fifty times each. After the punishment, which the defendant referred to the beating as being, the children were allowed in the house for dinner, but immediately thereafter they had to go back outside. Later that same day, James received another beating with the stick being struck approximately ten more times. Eventually they were allowed to enter the house and went to bed.

Two days later when the children attended school, the principal spoke to them and discovered that they had received a beating over the weekend. Two weeks earlier the principal had observed Jimmy limping in school and Shirley with her hair cut in a crude and unattractive style which necessitated one of her teachers providing her a wig to wear so she would not be subject to the ridicule of the other children. These prior incidences, together with the inquiry which he made on June 3, 1974, gave rise to the principal's concern over the type of care the children were receiving at home. The plight of the children had been reported to the

Welfare Department in the past, but on this occasion a caseworker from the Child Welfare Agency actually came out to the school at the insistence of the principal and examined the children personally. The State Police were also called on this day and trooper Mary Rosetti reported to the school and took photographs of the children's injuries which were subsequently admitted into evidence during the trial.

The children were then taken into temporary custody by the Child Welfare Agency pursuant to a court order obtained from a judge of Montgomery County. They were then transported to North Penn Hospital where they were examined by a physician who observed that the young girl was wearing a wig to cover her partially shaved head and upon examination found both children to have severe bruises and abrasions over the entire area of their buttocks and Shirley also had bruises on her thighs. On June 7, 1974, trooper Rosetti secured an arrest warrant from the district justice and on the 11th of that month, along with two other officers, arrested Terry Kramer on the charges of simple assault, aggravated assault and recklessly endangering another person. Terry Kramer was incarcerated in lieu of $5,000.00 bond.

Appellant initially contends that the lower court erred when it ruled that certain letters written by him to his wife while he was in jail waiting trial could be admitted into evidence. He argues that the prejudicial effect of these letters on the jury clearly out-weighed any probative value they might have contained and anything relevant in the letters could have been established during the trial through witnesses and other evidence. However, the lower court ruled that two of these letters contained statements by the defendant that would tend to establish his state of mind at the time he administered the beatings to his children on June 1, 1974, and one of the letters actually contained a threat which the lower court ruled would be admissible for the purposes of showing an intent to intimidate a witness.

Prior to the admission of the letters in question, the judge reviewed a number of letters the prosecution sought to have introduced at trial. After careful deliberation, the judge ruled that three of the letters contained references to the defendant's prior conviction for manslaughter [1] and as a result would be highly prejudicial and would not be permitted to be introduced. However, two letters written by the defendant to his wife on the dates of September 13, 1974 and September 16, 1974 were admitted for the purposes of establishing the feelings of the defendant towards his children, which would in turn assist in the determination of his motive and intent when he beat them on June 1, 1974. In the letter of September 13, 1974, he referred to the children as those stinking kids and expressed his gratitude that he no longer had to put up with their conduct which was "driving him up a wall" when he lived with them. In the letter of September 16, 1974, he spoke of the children as being "retarded, hateful, ugly selfish brats" and was happy to be in prison and away from them. The lower court in its Opinion stated that the letters clearly tended to establish the defendant's existing frame of mind when he punished the children and therefore would be of important probative value. In support of this ruling, reliance is placed on *McCormick, Law of Evidence*, § 294 (1954 Ed.).

> While such a state of mind may be proved by the person's actions, the declarations of the person whose state of mind is at issue are often a primary source of evidence of this matter. . . .
>
> Although it is required that the declaration describe a state of mind or feeling existing at the time of the declaration, the evidentiary effect of the declaration is broadened by the notion of continuity in the time of state of mind . . . continuity may also look backward

---

1. The defendant had been tried in the February Term of 1974 of the same court, but before a different judge, for the death of his youngest daughter which occurred in 1967, when she was ten months old. Why that case did not come to trial before 1974 is uncertain, but the jury returned a verdict of voluntary manslaughter and that is the incident that the defendant mentioned in some of his letters. That case is not part of the instant appeal.

. . . Since, however, the duration of states of mind or emotion varies with the particular attitude or feeling at issue and with the cause, it is reasonable to require as a condition of invoking the continuity notion that the declaration mirror a state of mind which, in light of all the circumstances including proximity in time, has some probability of being the same condition existing at the material time.

Since this case involved the physical abuse of children by a parent, the state of mind of that parent at the time of administering the beatings is crucial. It is generally accepted, at least in law, that parents have the right to use corporal punishment when raising their children. *Guerrieri v. Tyson,* 147 Pa.Super. 239, 24 A.2d 468 (1942); *Harris v. Galilley,* 125 Pa.Super. 505, 189 A. 779 (1937). However, at some point permissible corporal punishment no longer is such, but becomes malicious abuse. The courts and juries are faced with the very difficult task of drawing the line between the two. What is absolutely necessary to establish is the particular state of mind of the parent when administering the punishment. Was it accomplished with an attitude of proper parental responsibility for teaching the child right from wrong; was the offending conduct justification for the severity of the punishment, or was the parent acting with a malicious intent and thereby abusing the privilege of his relationship with the child? The parent's state of mind is a very difficult thing to establish and all relevant evidence that would tend to establish the existing intent at the time of the punishment should be admissible. A well known rule of evidence is that where evidence is relevant it will be admitted unless a potentially prejudicial effect clearly outweighs its probative value. See *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972); *Commonwealth v. Wright,* 227 Pa.Super. 134, 323 A.2d 349 (1974), and the cases cited therein; also *McCormick, Law of Evidence,* §§ 184–185 (1954 Ed.). When determining whether the proffered evidence is relevant, "[t]he general rule is that the questions concerned with the admission or exclusion of evidence are within the

sound discretion of the court and will be reversed on appeal only where a clear abuse of discretion exists." *Westerman v. Stout,* 232 Pa.Super. 195, 202, 335 A.2d 741, 745 (1975). Also see *Patrick F. Dalton Company v. Trans-American Freight Lines Inc.,* 219 Pa.Super. 223, 280 A.2d 635 (1971); *Cartmel v. Williams,* 207 Pa.Super. 144, 215 A.2d 282 (1965); *Wolfe v. Pickell,* 204 Pa.Super. 541, 205 A.2d 634 (1964). It is also well established that a trial judge is provided wide discretion in deciding what evidence will be admitted. *Glickman v. Prudential Assurance Company of America,* 151 Pa.Super. 52, 29 A.2d 224 (1942). Only after reviewing the contents of all the letters did the lower court permit the letters dated September 13, 1974 and September 16, 1974 into evidence. It was not unaware of the element of prejudice as indicated by its exclusion of the other letters. Thus it was well within the discretion of the trial judge to permit the letters to be introduced for the purposes of establishing the state of mind of the defendant when he administered the beatings of his children on June 1, 1974.

The third document appellant contends was improperly admitted was the Easter card of March 25, 1975. The lower court ruled that this would be allowed because it evidenced an intent on the part of the defendant to intimidate a witness. In the case of *Commonwealth v. Petro,* 115 Pa.Super. 388, 394, 176 A. 46, 48 (1934), this Court stated that "the Commonwealth may show an attempt by the defendant to intimidate its witnesses: *Cover v. Com.,* 5 Sadler 79, 8 A. 196; *Com. v. Marion,* 232 Pa. 413, 423, 81 A. 423; *Heslop v. Heslop,* 82 Pa. 537, 541." When cross-examined, the defendant stated that what he meant when he wrote "[w]hen I get out of here I am going to get a gun and you know what I am going to do  .  .  ." that he was going to go hunting. It would be well within the province of the jury to decide that this was not his intention when writing these words and that it was an attempt to threaten his wife. Therefore, it was within the trial judge's discretion to allow the Easter card as well as the letters.

■ Another point of error the appellant raises is the lower court's ruling that testimony and exhibits of the defendant's prior conduct could be admitted into evidence for the purposes of establishing that the defendant acted with malice when he beat his children on June 1, 1974. The testimony objected to was that of the mother as well as the two children and covered a period of eight or nine years prior to June 1, 1974. The mother testified that the defendant started beating the children when Jimmy was approximately four and Shirley was two and that the beatings were administered almost daily with such objects as yard sticks, broom handles, shovel handles and eventually branches from trees. She further testified that when she inquired about why the defendant beat the children he responded by stating that the children were retarded, ugly and dumb and he never wanted kids. Any toys or new clothing the children received as gifts from relatives were usually burned by the defendant. He testified that he had cut his daughter's hair so that she wouldn't be so cute and also admitted to burning the mattress she used to sleep on, leaving nothing but a few blankets covering the springs for her bed. When questioned about his personal opinion of the children he responded by stating they were "psychopathical (sic) liars" and they were also retarded. The testimony of the children corroborated the testimony of the mother as well as that of the father and Jimmy explained that following the beatings he would usually limp around and often was unable to write because in his attempt to protect himself he would ward off the blows of the stick with his hands.

Most of this testimony was undisputed and appellant's contention is that it should not have been admitted. In support of his position, appellant maintains that only prior convictions can be admitted into evidence and only in very limited circumstances. However, the law regarding admissibility of prior crimes is well developed. In *Commonwealth v. Wable,* 382 Pa. 80 at page 84, 114 A.2d 334 at page 336 (1955) the court stated:

It is true, of course, that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another . . . But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other as to establish the identity of a person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. (Emphasis in original).

Also see *Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *Commonwealth v. Ross*, 413 Pa. 35, 195 A.2d 81 (1963); *Commonwealth v. Raymond*, 412 Pa. 194, 194 A.2d 150 (1963); *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963); *Commonwealth v. Burdell*, 380 Pa. 43, 110 A.2d 193 (1955); *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938). In the case of *Commonwealth v. Schwartz*, 445 Pa. 515, 285 A.2d 154 (1971), the court included the element of *intent* within the "special circumstances" where evidence of prior crimes will be admissible. Also see, *Commonwealth v. Kravitz*, 400 Pa. 198, 216, 161 A.2d 861, 870 (1960) and *Commonwealth v. Novak*, 395 Pa. 199, 204, 150 A.2d 102, 105 (1959). *Wigmore* addresses the element of intent when he states, "[i]t is not here necessary to look for a general scheme or to discover a united system in all the acts; the attempt is merely to discover the intent accompanying the act in question; and the prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent." *II Wigmore on Evidence*, § 302 p. 200 (3rd Ed., 1940).

The essential elements in the prosecution of the defendant in this case were the intent with which he administered the beatings and the purposes of the beatings. Was the history of the defendant's relationship with his children such that the beatings on June 1, 1974 were inflicted with ill will and not parental responsibility? The most reliable method of resolving that question is to admit evidence of the defendant's conduct and feelings towards his children. In *Commonwealth v. Nelson,* 396 Pa. 359, at 365–366, 152 A.2d 913 at 916 (1959), the court stated "[t]o summarize, evidence of the previous relations between defendant and the deceased are relevant and admissible for the purpose of proving ill will or motive or malice which defendant had towards the deceased, irrespective of whether they had or had not resulted in a conviction of a prior crime." Also see *Commonwealth v. Patskin,* 372 Pa. 402, 93 A.2d 704 (1953); *Commonwealth v. Peyton,* 360 Pa. 441, 62 A.2d 37 (1948); *Commonwealth v. Jones,* 269 Pa. 589, 113 A. 57 (1921). As stated previously, the trial judge has a great deal of latitude when ruling on what evidence is relevant and admissible and what evidence must be excluded.

Appellant also contends that the evidence did not support the verdict. In support of this position, he argues that there was an absence of serious bodily injury and of a deadly weapon. The Crimes Code at 18 Pa.C.S. § 2702(a)(1) and (a)(4) defines aggravated assault as: "(1) attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; . . . (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." The testimony by the doctor who examined the children as well as that of the individual witnesses who observed the children two days after the beating clearly supports the position that the defendant did not only attempt to cause serious bodily injury, but actually did cause such injuries. The doctor testified that the buttock of each child had bruises over the entire area. He also testified that

the force necessary to inflict the bruises and ecchymosis evidenced on the children would have to have been substantial. He stated that it could have broken bones or ruptured a kidney. Albeit the blows were directed at the childrens' buttocks, there still was a very good likelihood that one or more could have gone astray and ruptured a kidney or broken a bone. The defendant testified that the children might have been limping or might have been unable to use their hands because they were struck on those parts of their bodies when they were jumping around while he was beating them. However, that attitude only reinforces the point that the defendant apparently had little concern for the children's well being. In affirming a conviction of aggravated assault, this Court stated, ". . . proof of malice is required, but not specific intent. This Court has held that in this offense '. . . it is not required that the intent to do injury be actual or specific. Malice is not limited to a particular ill will but comprehends reckless conduct from which injury is likely to result. *Commonwealth v. Lees,* 199 Pa.Super. 383, 387, 185 A.2d 815, 817 (1962).' " *Commonwealth v. Simms,* 228 Pa.Super. 85, 95, 324 A.2d 365, 370 (1974). Whenever the argument is made that the verdict is contrary to the weight of the evidence the general rule is that the evidence must be viewed along with all reasonable inferences that can be derived therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Bartlett,* 446 Pa. 392, 288 A.2d 796 (1972). We find that the evidence was properly admitted and it was sufficient to support the verdicts.

Affirmed.

HOFFMAN, J., concurs in the result.