J-S36017-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| PARIS LASHAWN HOWELL | : | |
| | : | |
| Appellant | : | No. 261 WDA 2020 |

Appeal from the Judgment of Sentence Entered October 24, 2018
In the Court of Common Pleas of Mercer County
Criminal Division at No(s):  CP-43-CR-0000084-2018

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY KING, J.:                        FILED OCTOBER 09, 2020

Appellant, Paris Lashawn Howell, appeals nunc pro tunc from the judgment of sentence entered in the Mercer County Court of Common Pleas, following his jury trial conviction for robbery.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On November 7, 2017, Appellant shot the seventeen-year-old victim in the buttocks during an armed robbery.  The Commonwealth filed a criminal information on March 9, 2018, charging Appellant with attempted murder, aggravated assault, and robbery—serious bodily injury.  Following trial, a jury convicted Appellant of the robbery charge and found him not guilty of the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3701(a)(1)(i).

remaining offenses. On October 24, 2018, the court sentenced Appellant to eight (8) to twenty (20) years' imprisonment. Appellant did not file a post-sentence motion or notice of appeal.

On October 30, 2018, Appellant filed a pro se petition pursuant to the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546. The court appointed counsel, who filed an amended petition. On June 27, 2019, the parties entered into a stipulation whereby Appellant withdrew the pending PCRA petition, and the court reinstated Appellant's post-sentence and direct appeal rights. Appellant subsequently filed a post-sentence motion nunc pro tunc, which the court denied on September 24, 2019. Again, Appellant did not pursue a direct appeal.

On December 16, 2019, Appellant filed another pro se PCRA petition. The court appointed current counsel on January 14, 2020. Before appointed counsel took any further action, the court reinstated Appellant's direct appeal rights by order entered January 27, 2020.

Appellant timely filed a notice of appeal nunc pro tunc on February 18, 2020. That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On March 27, 2020, Appellant filed his Rule 1925(b) statement.

Appellant now raises two issues for our review:

> Whether the verdict of conviction on count 3 of the indictment alone represents an impermissible inconsistent verdict?

- 2 -

Whether trial counsel was ineffective given the facts and circumstances of this case such that his adjudication on count 3 was unreliable?

(Appellant's Brief at 22).

In his first issue, Appellant asserts the Commonwealth charged him with three offenses involving "serious bodily injury." Appellant contends the jury's decision to convict him of robbery while acquitting him of attempted murder and aggravated assault amounts to an inconsistent verdict. Appellant also maintains the Commonwealth presented insufficient evidence to support the robbery conviction. Specifically, Appellant argues: 1) no property was stolen from the victim; 2) the victim's sister, who was not present during the incident, identified Appellant as a suspect; 3) the victim did not know who shot him; and 4) "the victim took a great deal of time to point to [Appellant] as the perpetrator at trial." (Id. at 29). Based upon the foregoing, Appellant concludes this Court must reverse his conviction. We disagree.

Pennsylvania law permits inconsistent verdicts, provided sufficient evidence supports each conviction. Commonwealth v. Miller, 613 Pa. 584, 588, 35 A.3d 1206, 1208 (2012).

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

> Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

Commonwealth v. Rose, 960 A.2d 149, 158 (Pa.Super. 2008), appeal denied, 602 Pa. 657, 980 A.2d 110 (2009) (quoting Commonwealth v. Frisbie, 889 A.2d 1271, 1273 (Pa.Super. 2005), appeal denied, 588 Pa. 747, 902 A.2d 1239 (2006)). "[A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence...." Miller, supra at 596, 35 A.3d at 1213.

> Our standard of review for sufficiency claims is as follows:

> > The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Tucker, 143 A.3d 955, 964 (Pa.Super. 2016), appeal denied, 641 Pa. 63, 165 A.3d 895 (2017) (quoting Commonwealth v.

Hansley, 24 A.3d 410, 416 (Pa.Super. 2011)).

The Crimes Code defines the offense of robbery as follows:

§ 3701. Robbery

(a) Offense defined.—

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another[.]

*   *   *

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S.A. § 3701(a)(1)(i), (2).

"A conviction for robbery does not require proof of a completed theft, it requires only that the requisite force was used 'in the course of committing a theft[.]'" Commonwealth v. Robinson, 936 A.2d 107, 110 (Pa.Super. 2007), appeal denied, 597 Pa. 705, 948 A.2d 804 (2008). "Serious bodily injury" is defined as: "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

Instantly, the seventeen-year-old victim was walking home from school on November 7, 2017. (See N.T. Trial, 6/19/18, at 27-28). The victim proceeded down Malleable Street, where he walked past Appellant. (Id. at

30). Appellant and two cohorts began to follow the victim. (Id. at 31). The victim noticed the men behind him and turned into an alleyway. (Id.) Appellant ran to catch up with the victim, brandished a firearm, and demanded the victim's possessions. (Id.) The victim attempted to flee, and Appellant opened fire. (Id. at 32). A bullet struck the victim in the left buttocks and exited through his thigh.[2] (Id.)

Despite being wounded, the victim escaped to his residence. (Id. at 33). The victim's sister was home, and the victim informed her about the shooting as he called 911. (Id. at 33-34). Police arrived at the victim's residence within minutes, and the victim provided a description of the shooter. (Id. at 33). After the victim gave the description, his sister knew it was Appellant because "one of [her] friends used to date the man who [the victim] described." (Id. at 53). The victim's sister obtained a picture of Appellant from his Facebook page and showed it to the police. (Id. at 54). Thereafter,

_____

[2] At trial, the Commonwealth introduced the victim's medical records and photographs of the victim's injuries. (See N.T. Trial at 36-38). These exhibits were not included with the certified record on appeal. Nevertheless, the victim's testimony alone established a serious bodily injury. See Commonwealth v. Daniels, 467 Pa. 35, 38, 354 A.2d 538, 539 (1976) (stating jury properly found that defendant caused serious bodily injury where he fired single bullet that struck and wounded victim); Commonwealth v. Kramer, 371 A.2d 1008, 1013 (Pa.Super. 1977) (concluding witness's testimony established serious bodily injury where defendant repeatedly struck his children on buttocks; although blows were directed at buttocks, "there still was a very good likelihood that one or more could have gone astray and ruptured a kidney or broken a bone").

an ambulance transported the victim to a nearby hospital for treatment. (Id. at 52).

Later that day, the police presented the victim with a photographic array, which included Appellant's picture. (Id. at 38, 62). The victim immediately selected Appellant's photograph from the array and identified him as the shooter. (Id. at 38-39). The victim also identified Appellant as the shooter at trial.[3] (Id. at 30-32, 35).

Here, the victim's trial testimony established that Appellant inflicted serious bodily injury during the course of committing a theft. See 18 Pa.C.S.A. § 2301; 18 Pa.C.S.A. § 3701. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported the robbery conviction. See Tucker, supra. Because sufficient evidence supported the jury's decision, Appellant is not entitled to relief on his claim of an inconsistent verdict. See Rose, supra.

In his second issue, Appellant identifies certain challenges to the effectiveness of trial counsel. For the following reasons, Appellant is not entitled to relief at this juncture.

"[A]s a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." Commonwealth v. Grant,

_____

[3] Contrary to Appellant's argument, our examination of the trial transcript does not reveal any hesitation on the part of the victim to identify Appellant as the shooter at trial.

572 Pa. 48, 67, 813 A.2d 726, 738 (2002). Our Supreme Court has recognized two very limited exceptions to the general rule: (1) in extraordinary circumstances where claims of trial counsel's ineffectiveness are apparent from the record and immediate consideration best serves the interests of justice and/or; (2) where there is good cause shown and review of the claim is preceded by a waiver of the right to seek collateral review. Commonwealth v. Holmes, 621 Pa. 595, 598-99, 79 A.3d 562, 563-64 (2013). Our Supreme Court also adopted a third exception, which requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." Commonwealth v. Delgros, 646 Pa. 27, 42, 183 A.3d 352, 361 (2018).

Instantly, the record does not indicate that extraordinary circumstances exist, or that Appellant waived his right to PCRA review. See Holmes, supra. Further, Appellant is not statutorily barred from seeking PCRA relief. See Delgros, supra. Thus, we decline to entertain Appellant's ineffectiveness complaints on direct appeal, and we defer such claims until collateral review. See Grant, supra. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2020